[Civ. No. 9633.   First Appellate District, Division One.—May 22, 1935.]

W. R. FONTAINE, Appellant, v. ROBERT C. STORRIE et al., Respondents.

Chandler & Quayle and L. W. Allen for Appellant.

Humphrey, Searls, Doyle & MacMillan, Redman, Alexander & Bacon and Herbert Chamberlin for Respondents.

TUTTLE, J., *pro tem.*—By this action plaintiff, a subcontractor, seeks to foreclose a lien based upon the balance due under his contract. The original contractor and his sureties are joined as defendants. The trial court denied all relief to plaintiff, with the exception that it gave him a personal

judgment against the original contractor in the sum of $3,500. Plaintiff now appeals from the judgment.

. In the early part of 1925, Feather River Power Company was the owner of Buck's Creek project in Plumas County. On October 30, 1925, R. C. Storrie and Company, a copartnership composed of Robert B. Muir and Robert C. Storrie, entered into a contract to construct, for the owner, a hydroelectric plant for $7,691,889. This contract, together with a bond executed by defendant surety companies, as required by section 1183 of the Code of Civil Procedure, was duly filed.

On January 22, 1926, Fontaine, appellant herein, and one Dardier, as parties of the second part, entered into a subcontract with Storrie and Company for the construction of 3,000 feet of a water diversion tunnel connected with the project.

On October 26, 1926, and after this tunnel had been driven some 1380 feet under said subcontract, the parties to the original subcontract entered into another agreement whereby it was mutually agreed that said contract of January, 1926, between the parties "*shall stand cancelled as of the date of this agreement*", subject to the condition that Fontaine and Dardier should not, nor should their sureties under their bond, "be released from the obligation to pay in full for labor and material furnished for the work done under said agreement up to the date of this cancellation". There were other provisions in this contract which are immaterial here. Prior to the commencement of this action Dardier assigned to plaintiff all his interest in the lien claim and account, and in any moneys due under the agreement of January 22, 1926.

The contention of plaintiff is succinctly set forth in paragraph X of his complaint. He there alleges that he and his assignor "performed all the conditions of their said subcontract on their part to be performed; that under the terms of said subcontract the said R. C. Storrie and Company became and were indebted to the plaintiff and the plaintiff and the said H. V. Dardier for and on account of the construction of said portion of said tunnel so constructed by them, as aforesaid, in the full sum of $55,314.89; that the said R. C. Storrie and Company has paid on account of such construction the sum of $46,285.87, and no more; and that there is still due and unpaid on account of said construction, a

balance of $9,029.02, no part of which has been paid". It also appears that the contract price for driving this tunnel was $40 per linear foot, and the amount claimed as earned is arrived at by multiplying the total footage of some 1380 feet by this price per foot.

The first contention of appellant is that there is no evidence to support the finding that the portion of the tunnel constructed was not completed in accordance with the terms of the subcontract. An examination of the record discloses that there is considerable conflict upon this question of fact. If there is any substantial evidence to support this finding, our inquiry can go no further. That such evidence was introduced is beyond dispute, and it is unnecessary to go over the matter in detail. There was evidence that the tunnel was off the grade specified "all the way from 8 inches to 18 inches too high". The lines and grades were given to the subcontractors in accordance with the subcontract. There is evidence that after plaintiff and his assignor canceled the contract, defendant Storrie and Company expended some $11,000 to bring the tunnel to grade and complete the subcontract.

To meet this situation, appellant invokes the rule of "substantial performance", and further contends that he is entitled to an express finding to the effect that there was no substantial performance. Like any other question of fact, the one of substantial performance of the terms of a contract is for the trial court. It is true that in the furtherance of justice and in accordance with section 1187 of the Code of Civil Procedure, "trivial imperfection" shall not be deemed such a lack of completion as to prevent the filing of liens, and substantial performance is all that is required. The evidence here shows not merely a trivial imperfection in the performance of plaintiff's contract, but a substantial failure in completion, which would preclude plaintiff from maintaining an action to recover the full amount of the contract. (*Bianchi* v. *Hughes,* 124 Cal. 24 [56 Pac. 610].) As to the omission of the court to find there was no substantial performance, the trial court found not only that there had been no performance, but it also found all the facts relating to the performance, in detail. Thus the findings show on their face that there was no substantial performance. These contentions, therefore, are without merit.

■ There is evidence in the record that after plaintiff surrendered his contract, defendant Storrie and Company expended some $11,000 in completing it. This fact was found by the trial court. The amount is far in excess of the demands and claims of plaintiff for the amount due him under the assumption that he had fully performed, and an offset was found to that effect. It follows that there was nothing due plaintiff and his assignor when they ceased work, and they are not entitled to a personal judgment or to a lien, nor are the sureties of the original contractor liable. (*Hubbard* v. *Jurian,* 35 Cal. App. 757, 770 [170 Pac. 1093].)

The trial court allowed plaintiff $3,500 as being due him under the *cancellation contract.* This judgment is against Storrie and Company alone and has no relation to the original subcontract, according to the findings. The theory upon which the court arrived at this amount is not altogether clear, but in any event it has nothing to do with the subcontract upon which this action is based.

■ Aside from the foregoing, there is an aspect of the case which would seem to absolutely preclude plaintiff from securing relief under his subcontract. This is the simple fact that the subcontract was *canceled* by the contract of October, 1926. That this contract was executed for this purpose, and that the parties thereby intended to and actually did abrogate the original subcontract, there can be no question. The fact that the trial court did not find *expressly* that the subcontract was canceled is immaterial, for the court found that this second contract was executed and it is set out *in full* in the findings. The court then found that the sum of $3,500 was due plaintiff from defendant Storrie and Company under the second contract. The conclusions of law are to the effect that plaintiff was entitled to judgment against Storrie and Company in the sum of $3,500 and that he was not entitled to recover against the defendant's surety.

■ The judgment must be upheld; first, upon the ground that there is substantial evidence to support the finding of the trial court that there was nothing due plaintiff under his subcontract, and, second, upon the ground that the second agreement precluded plaintiff from maintaining any action upon the subcontract. There is no contention that the amount awarded plaintiff under the second agreement was less than was due him *under that agreement.*

Other points urged as grounds for reversal have no substantial merit.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.